UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES S.,[1]

                                                                  **DECISION AND ORDER**

                     Plaintiff,                          1:19-CV-1170(JJM)

v.

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
_____

        This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that plaintiff was not entitled to Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI"). Before the court are the parties' cross-motions for judgment on the pleadings [11, 13].[2] The parties have consented to my jurisdiction [15]. Having reviewed the parties' submissions [11, 13, 14], the Commissioner's motion is granted.

## BACKGROUND

        The parties' familiarity with the 809-page administrative record [6] is presumed. In March and June 2016, plaintiff filed applications for DIB and SSI, alleging a disability onset date of February 29, 2016, which was ten days after he was shot with a firearm in the left leg. Id., pp. 215, 334. At the time of the shooting, plaintiff was 39 years old. Plaintiff's alleged resulting

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only his first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

physical limitations included drop foot.  Id., p. 215. Plaintiff also suffered from alleged mental limitations, including bipolar and anxiety/impulse disorders, mania/panic attacks, and voyeurism disorder/sexual addiction.  Id., pp. 215, 226.[3]

The February 19, 2016 gunshot required an initial surgery, with fixation, to repair a "left proximal tibial fracture, bicondylar tibial plateau". Id., p. 337. Thereafter, he made "multiple return trips to the Operating Room for clean out and debridement".  Id., p. 355.  On March 21, 2016, he was transferred from the Erie County Medical Center to Terrace View for subacute rehabilitation.  Id. On May 27, 2016, the external fixation was removed and plaintiff underwent a bone grafting procedure.  Id., pp. 373-75.  By June 10, 2016, plaintiff was discharged to home with Neurontin, and directed to follow-up on an outpatient basis. Id., p 380.

On August 5, 2016, plaintiff underwent a consultative internal medicine examination with John Schwab, D.O., who found that he had full range of motion in his hips and knees bilaterally, assessed his strength as 5/5 in both is upper and lower extremities, and found that "[n]o muscle atrophy [was] evident".  Id., pp. 429-30.  However, he did find that plaintiff's left ankle dorsiflexion was 0 degrees and had a "decreased sensation to light touch on the medial and lateral aspect of his left foot".  Id., p. 430. Dr. Schwab opined that plaintiff "needs crutches to walk.  Due to the crutches, he has restrictions on mobility".  Id., p. 430.

On the same day as his internal medical examination, plaintiff underwent a consultative psychiatric evaluation with Gregory Fabiano, Ph.D., who diagnosed him with "[a]djustment disorder with depression and anxiety, chronic", and "[a]lcohol substance use disorder in early full remission" Id., p. 425.  Dr. Fabiano opined that plaintiff "does not appear to

---

[3]   Plaintiff testified that he was shot because of his voyeuristic activities ([6], p. 44), and had been sentenced, concurrently with a domestic violence incident, to probation for "voyeuristic activity" in 2014. Id., p. 43.

have any evidence of limitation in his ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks . . . perform complex tasks independently, and make appropriate decisions". Id.  He also found that plaintiff had "mild to moderate limitation in his ability to appropriately deal with stress and relate adequately with others", but noted that plaintiff's psychiatric and substance abuse problems did "not appear to be significant enough to interfere with [plaintiff's] ability to function on a daily basis". Id.

After plaintiff's claim was initially denied, an administrative hearing was held on September 20, 2018 before Administrative Law Judge ("ALJ") Paul Kelly, at which plaintiff, who was represented by an attorney, and Sherri Plan, a vocational expert, testified. Id., pp. 33-54.  At the hearing, plaintiff testified that he could stand "probably no more than four hours at a time without a good rest period", and that it was also difficult for him to sit for "a long period of time" because of hip pain connected to his bone graft. Id., p. 38.  According to plaintiff, he continued to use a "walking stick" and still suffered from left foot drop, which caused him to "[s]ometimes" trip when walking. Id.

On October 30, 2018, ALJ Kelly issued a decision finding that plaintiff was not disabled. Id., pp. 15-28.  He determined that plaintiff's severe impairments were "status post gunshot wound, injuries to the left hip and left leg including fractures status post surgeries; adjustment disorder; a depressive disorder variously characterized as major depressive disorder and persistent depressive disorder; voyeuristic disorder; and cannabis use disorder". Id., p. 18. ALJ Kelly concluded that plaintiff had the residual functional capacity ("RFC") to perform sedentary work "except only occasionally operate foot controls with the left lower extremity; never climb ladders, ropes, or scaffolds; only occasionally climb ramps or stairs; never crawl;

only occasionally balance, stoop, kneel, or crouch; work limited to simple routine tasks; only occasional interaction with the public; and only occasional interaction with coworkers". Id., p. 20.

In formulating that RFC, ALJ Kelly gave "significant" weight to the consultative opinions of Drs. Schwab and Fabiano. Id., p. 23. Based on the RFC, ALJ Kelly concluded that plaintiff was unable to perform his past relevant work, but that there were significant jobs in the national economy that he was able to perform, including assembler, specimen preparer, and final assembler, and therefore was not disabled from February 29, 2016 though the date of his October 30, 2018 decision. Id., pp. 27-28.

The Appeals Council denied plaintiff's request for review on July 11, 2019. Id., pp. 1-3. Thereafter, this action ensued.

## DISCUSSION

**A.     Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff

bears the burden with respect to steps one through four, while the Commissioner has the burden at step five.  Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.      Is the Physical RFC Supported by Substantial Evidence?**

Plaintiff argues that "[t]he only physical medical opinion in the file . . . is astoundingly vague, stating only that Plaintiff 'needs crutches to walk' and 'due to the crutches, he has restrictions on mobility'". Plaintiff's Memorandum of Law [11-1], p. 10, referring to Dr. Schwab's opinion. He contends that the "ALJ gave this opinion significant weight, while acknowledging that it was given at a time approximately six months after Plaintiff's initial injury . . . . The ALJ did not attempt to clarify the opinion and instead crafted a highly specific RFC finding without the support of any meaningful functional information". Id. In response, the Commissioner argues that ALJ Kelly properly considered "evidence from after Dr. Schwab gave his opinion [that] demonstrated that Plaintiff's condition improved so that he no longer required the use of crutches to stand and walk".  Commissioner's Brief [13-1], p. 21.

I agree with the Commissioner. Dr. Schwab opined that plaintiff required crutches to walk, and that his physical limitations were caused by his need to use crutches. *See* [6], p. 430 ("[h]e needs crutches to walk.  Due to the crutches, he has restrictions on mobility").  Apart from the limitations arising from plaintiff's need to use crutches, Dr. Schwab did not find that he had any other physical limitations, including on his ability to sit.  *See* Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir.1983) (an ALJ may "rely not only on what the record says, but also on what it does not say").

ALJ Kelly made clear in his opinion that he was not accepting Dr. Schwab's opinion as an assessment of plaintiff's permanent limitations, but rather as an assessment of "his

-5-

condition *at the time of that examination*, just 6 months after the initial injury" when plaintiff was still recovering. [6], p. 23 (emphasis added). Relying on the subsequent records, ALJ Kelly found that plaintiff experienced "significant improvement in [his] condition within less than 12 months of onset, to a point where he was weight-bearing on the left, and no longer relied on crutches to walk". Id., p. 24. ALJ Kelly's conclusion that plaintiff's condition improved within 12 months of the onset to a point where he was not fully reliant on crutches to walk is supported by substantial evidence.

Notably, plaintiff himself acknowledged in his hearing testimony that for approximately two months in early 2017 he "worked for a collection agency" ([6], pp. 39-40), and that while he was terminated from that position, it was not because of any walking or other restrictions tied to the use of his cane. He explained that he was terminated "because of the difficulty that I had getting to and from work and actually staying in a stationary position because I did have to get up and stretch a lot and move around". Id.[4] Likewise, his contemporaneous March 13, 2017 treatment record states that plaintiff "tried to go back to work doing collections but was *having difficulty with transportation* and could not work". [6], p. 439 (emphasis added). Shortly after the one-year anniversary of his February 29, 2016 onset date, his April 19, 2017 treatment records reflect that plaintiff planned to start a sales position requiring "lots of walking, standing". Id., p. 581.

Based on this evidence, ALJ Kelly properly concluded that plaintiff's "description of his various attempts at short-term employment were consistent with significantly regained

---

[4]  Plaintiff also testified that he last worked in late August or July of 2018 for a temporary agency performing day assignments, and had worked for that company since the mid-90s performing that type of work. [6], p. 36. However, he had only been working for the temporary agency for an average of eight to 16 hours per month, and did not work more often because some of the work required heavy lifting. Id., pp. 36-37. Instead, plaintiff was working events, "pretty much standing around, sweeping up, cleaning tables". Id., p. 37.

capacity to stand and walk without crutches, within less than 12 months of the initial injury". *See* Dyjewska v. Colvin, 2018 WL 703103, \*5 (W.D.N.Y. 2018) ("'Social Security regulations provide that employment 'during any period' of claimed disability may be probative of a claimant's ability to work.' . . . Thus, it would not have been impermissible for the ALJ to have drawn an adverse inference based on her ability to perform light-duty work, albeit on a part-time basis, during the period for which she claims to be totally disabled"); Silva v. Saul, 2019 WL 2569595, \*5 (W.D.N.Y. 2019) ("[a]n ALJ may . . . properly consider a claimant's demonstrated ability to work part-time during the relevant period as evidence that the claimant is not completely disabled"); 20 C.F.R. §404.1571 ("[t]he work . . . that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level . . . . Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did"). *See also* Cichocki v. Astrue, 729 F.3d 172, 178 (2d Cir. 2013) (the ALJ's decision was supported by substantial evidence where, *inter alia*, plaintiff's self-described activities "such as walking her dogs and cleaning her house", were "consistent with a residual capacity to perform light work").

That finding is bolstered by plaintiff's subsequent treatment records, including his October 17, 2017 treatment record from Best Behavioral Health, which revealed that he had "no deficits in gait" ([6], p. 561); his December 7, 2017 treatment record from Timothy McDaniel, M.D., his treating physician, indicating that he was "working day labor" (id., p. 576); and February 24, 2018 treatment from Dr. McDaniel, stating that his gait was "steady and fluid". Id., p. 572.[5]

---

[5] Although not raised by the Commissioner, even if plaintiff had a continued need to use a cane, "the use of a cane . . . to aid in ambulation is not inconsistent with an RFC of sedentary work". Stover v. Saul, 2020 WL 897411, \*5 (W.D.N.Y. 2020); Zeler v. Commissioner of Social Security, 2019 WL 210841, \*3 (W.D.N.Y. 2019) ("the finding of sedentary work is consistent with the use of a cane for

Plaintiff further argues that the record indicates that he "needs some sort of sit/stand option", and that it was a harmful error for ALJ Kelly not to include one. Plaintiff's Memorandum of Law [11-1], p. 13. However, the only evidence in the record supporting the need for a sit/stand option comes from plaintiff's own testimony, but plaintiff does not challenge ALJ Kelly's credibility determination that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record". [6], p. 22.

In any event, as the Commissioner notes, the Second Circuit has observed that "'[t]he regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight.'" Commissioner's Brief [13-1], p. 23 (*quoting* Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004)).

While plaintiff argues that "adequate testimony from a vocational expert on the issue is required" (plaintiff's Memorandum of Law [11-1], p. 13), the vocational expert here was in fact questioned on this issue. Plaintiff's counsel specifically asked the vocational expert if a sit/stand option on an hourly or 30 minute basis would affect the ability of an individual to perform the identified jobs, and in response, the vocational expert testified "I don't really see a problem with that. You know most employers don't mind if you have to get up, stretch, you know so I don't really see an issue with that". [6], p. 53.

---

walking that is a minor part of job duties"). *See also* Podolsky v. Colvin, 2013 WL 5372536, *17 (S.D.N.Y. 2013) ("while the use of a cane may impact the ability of a claimant to do *light or medium work*, there was substantial evidence in the record for the ALJ to have concluded that Podolsky could perform sedentary work with his cane" (emphasis in original)).

### C. Is the Mental RFC Supported by Substantial Evidence?

Plaintiff argues that while ALJ Kelly gave significant weight to Dr. Fabiano's opinion that he "had mild to moderate limitations in his ability to appropriately deal with stress and relate adequately with others", his RFC is not supported by substantial evidence, since it failed to "include any limitations on interactions with supervisors" and "to properly evaluate the individualized effects of [his] stress on his ability to perform work". Plaintiff's Memorandum of Law [11-1], p. 16.  In response, the Commissioner argues that because "Dr. Fabiano did not assess any particular limitation in Plaintiff's ability to interact with supervisors . . . there is no inconsistency between Dr. Fabiano's opinion and the ALJ's RFC finding".  Commissioner's Brief [13-1], p. 27.  He further argues that "[e]ven without explicitly referencing a stress limitation, by [limiting plaintiff to only simple, routine tasks and only occasional interactions with the public and coworkers], the ALJ appropriately translated the mental limitations he found to be supported by the overall record, including those related to stress", and that "the jobs the ALJ found Plaintiff could perform . . . are all unskilled jobs suitable for claimants with limitations to even low stress work".  Id., p. 28.  I agree with the Commissioner.

Dr. Fabiano concluded that notwithstanding plaintiff's mild to moderate limitations in interacting with others and appropriately dealing with stress, plaintiff retained the ability "to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, . . . perform complex tasks independently, and make appropriate decisions". [6], p. 425.

"There is plethora of case law within the Second Circuit holding that a RFC for simple routine work is not inherently inconsistent with limitations in the plaintiff's ability to deal

with stress, or other specific areas of mental functioning, particularly where the source who provided such limitations ultimately opined the plaintiff is capable of performing simple, routine, repetitive work." Shirback v. Commissioner of Social Security, 2020 WL 247304, *4 (W.D.N.Y. 2020).  For example, in Wright v. Berryhill, 687 Fed. App'x 45, 48–49 (2d Cir. 2017) (Summary Order), while the plaintiff "had mild to moderate limitations . . . relating adequately with others, and appropriately dealing with stress, he was nonetheless able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, make appropriate decisions, and maintain a regular schedule".  Based on that evidence, the Second Circuit found that it was unable to "conclude that a reasonable factfinder would *have to conclude* that the Plaintiff lacked the ability to perform" the ALJ's mental RFC. Id. at 49 (emphasis in original). *See also* Ramsey v. Commissioner of Social Security, __Fed. App'x __, 2020 WL 6372994, *1 (2d Cir. 2020) (Summary Order) (substantial evidence "is a 'very deferential standard of review - even more so than the clearly erroneous standard.'. . . Notably, if the evidence 'is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld'").

        The same holds true here.  ALJ Kelly's RFC, which limited plaintiff to "simple, routine" work, with only occasional interaction with the public and coworkers, is consistent with the significant weight that ALJ Kelly gave to Dr. Fabiano's opinion.  As the Commissioner argues (and plaintiff does not dispute in his reply), the unskilled jobs that ALJ Kelly found plaintiff was capable of performing are suitable to the mild to moderate limitations assessed by Dr. Fabiano and adopted by ALJ Kelly.  *See* Cowley v. Berryhill, 312 F. Supp. 3d 381, 384 (W.D.N.Y. 2018) ("[t]o the extent that the ALJ's failure to include a 'low stress' limitation in plaintiff's RFC in order to fully account for the limitations opined by Dr. Lin is alleged to be

-10-

erroneous, any such error is harmless", since "unskilled jobs . . . are suitable for claimants with limitations to 'low-stress' work"); Carthron-Kelly v. Commissioner of Social Security, 2017 WL 9538379, *7 (N.D.N.Y. 2017), adopted, 2018 WL 333827 (N.D.N.Y. 2018) ("[t]he ALJ's mental RFC determination was consistent with Dr. Shapiro's opinion that Plaintiff had mild to moderate limitations in her ability to interact with others because even a finding of moderate limitations in social functioning does not preclude the ability to perform unskilled work").

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [13] is granted and the plaintiff's cross-motion [11] is denied.

**SO ORDERED**.

Dated: December 30, 2020

    /s/Jeremiah J. McCarthy
    JEREMIAH J. MCCARTHY
    United States Magistrate Judge